**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 18-cv-01528-CMA-MEH

RUSS PETRIE,

    Plaintiff,

v.

GOSMITH, INC.,

    Defendant.

___

**ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION**
___

    This matter is before the Court on Defendant GoSmith, Inc.'s Motion to Compel Arbitration and to Dismiss or in the Alternative Stay the Action. (Doc. # 27.) The Motion has been fully briefed. (Doc. ## 37, 51, 57.) Having thoroughly reviewed the underlying briefing, pertinent record, and applicable law, the Court grants Defendant's Motion for the following reasons.

    **I.    BACKGROUND**

    Defendant GoSmith provides an online, nationwide home improvement marketplace for consumers and service professionals. (Doc. # 27 at 3.) After completing the online registration process, users may access Defendant's website to submit requests for quotes on home improvement projects from professionals in their area. Defendant will then notify local professionals of the consumer's job request. Additionally, professionals may respond to job notifications by communicating a quote

or bid to the consumer and setting up appointments. In order to access the online consumer requests for quotes and set up appointments with the requesting customers, professionals must register with Defendant and accept its Terms of Use, which contain an arbitration agreement.

Plaintiff Russ Petrie is a residential contractor and owner of RG Remodeling. (Doc. # 38 at 1.) Plaintiff initiated the instant action alleging that text messages he received on his cell phone in connection with Defendant's services violated the Telephone Consumer Protection Act. At issue in the instant motion is whether Defendant registered online with Defendant and, as part of the registration process, agreed to be bound by Defendant's Terms of Use, including the arbitration agreement.

## II. ARBITRATION STANDARDS

The Federal Arbitration Act ("FAA") "manifests a liberal federal policy favoring arbitration." *Comanche Indian Tribe v. 49, L.L.C.*, 391 F.3d 1129, 1131 (10th Cir. 2004) (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991)). Consequently, the Court must "resolve 'any doubts concerning the scope of arbitrable issues . . . in favor of arbitration.'" *P & P Industries, Inc. v. Sutter Corp.*, 179 F.3d 861, 866 (10th Cir. 1999) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)). "In addition, this liberal policy 'covers more than simply the substantive scope of the arbitration clause,' and 'encompasses an expectation that [arbitration] procedures will be binding.'" *Id.* (citation omitted).

"[A]lthough the presence of an arbitration clause generally creates a presumption in favor of arbitration, this presumption disappears when the parties dispute the

2

existence of a valid arbitration agreement." *Bellman v. i3Carbon, LLC*, 563 F. App'x 608, 613 (10th Cir. 2014) (unpublished) (citations omitted). Determining whether a dispute is subject to arbitration "is similar to summary judgment practice." *Id.* at 612 (quoting *Hancock v. Am. Tel. & Tel. Co.*, 701 F.3d 1248, 1261 (10th Cir. 2012)). The party moving to compel arbitration must present "evidence sufficient to demonstrate the existence of an enforceable agreement." *Id.* The burden then shifts to the nonmoving party "to raise a genuine dispute of material fact regarding the existence of an agreement." *Id.*; *BigBen 1613, LLC v. Belcaro Grp., Inc.*, No. 17-CV-00272-PAB-STV, 2018 WL 4257321, at *2 (D. Colo. Sept. 6, 2018).

### III.   ANALYSIS

In support of its Motion, Defendant argues that an enforceable arbitration agreement existed and that Plaintiff assented to it. Plaintiff, by contrast, denies that he ever agreed to Defendant's Terms of Use, which contain the arbitration clause. The Court will address each argument in turn.

**A.   WHETHER DEFENDANT PRESENTED SUFFICIENT EVIDENCE TO DEMONSTRATE THE EXISTENCE OF AN ENFORCEABLE AGREEMENT**

In order to meet its initial burden of demonstrating an enforceable arbitration agreement, Defendant submitted a copy of the Terms of Use that had an effective date of April 13, 2017, and were in effect at the time of Plaintiff's alleged registration in May 2017. The Terms indicate:

> You agree that any dispute or claim arising out of or relating in any way to these Terms, your access to or use of the Services or any relationship between you and [Defendant], including but not limited to the validity, applicability or interpretation of these Terms . . ., will be resolved by binding arbitration rather than in court. There is no judge or jury in arbitration, and

> court review of an arbitration is limited. The arbitration will be conducted by the American Arbitration Association . . . under its then-applicable rules . . . .

(Doc. # 27-3 at 13.) Defendant also submitted the declaration of Brenton Marrelli, Defendant's CEO, attesting to the copy's authenticity. (Doc. # 27-1 at 3.)

With respect to internet arbitration agreements, courts "routinely" uphold such agreements[1] provided the user had "reasonable notice, either actual or constructive, of the terms of the putative agreement and . . . manifested asset to those terms." *Vernon v. Qwest Commc'ns Int'l, Inc.*, 857 F.Supp.2d 1135, 1149 (D. Colo. 2012).

Defendant argues that Plaintiff consented to the Terms of Use when he registered for an account on Defendant's website in May 2017. (Doc. # 27 at 3.) Specifically, Defendant asserts that Plaintiff had reasonable notice of the arbitration agreement because the Terms of Use "are accessible to the [user] from [Defendant's] online registration website via hyperlinks embedded in the acknowledgement next to the check box, which states 'I have read and agree to the terms & privacy policy." (Doc. # 27 at 3.) Additionally, Defendant asserts that Plaintiff manifested assent to the Terms of Use, and thus the arbitration agreement, by affirmatively "check[ing] [the] box to indicate his agreement to the Terms of Use and Privacy Policy, and click[ing] 'See Job Matches.'" (*Id.* at 4.) Further, Defendant contends that Plaintiff also manifested assent

---

[1] Internet agreements can take several forms, including (1) "click-wrap agreements" which present the consumer with terms and conditions followed by an affirmative assent mechanism—like an "I agree" button; (2) browse-wrap agreements that require no affirmative "click" by the user; and (3) "hybrid agreements," where "the terms being accepted do not appear on the same screen as the accept button, but are available with the use of hyperlink." *Vernon v. Qwest Commc'ns Int'l, Inc.*, 857 F. Supp. 2d 1135, 1149 (D. Colo. 2012). The pertinent agreement in this case is a hybrid agreement.

to the arbitration agreement by "continu[ing] to use [Defendant's] services following his registration." (*Id.* at 11); (Doc. # 27-3 at 2) ("By using the Services, you agree to these Terms" which "require any dispute or claim between you and [Defendant] to be resolved though binding arbitration . . . ."). Defendant's position is supported by data it routinely collects when users register on Defendant's website. *See* (Doc. # 51).

Thus, Defendant has presented evidence that there was reasonable notice of the arbitration agreement and that Plaintiff assented to that agreement. As a result, Defendant has met its initial burden of demonstrating an enforceable arbitration agreement. *Bellman*, 563 F. App'x at 613; *BigBen*, 2018 WL 4257321, at *2.

**B.     WHETHER PLAINTIFF RAISED A GENUINE DISPUTE OF MATERIAL FACT REGARDING THE EXISTENCE OF AN AGREEMENT**

Because Defendant met its initial burden, Plaintiff must "raise a genuine dispute of material fact regarding the existence of an agreement." *Bellman*, 563 F. App'x at 613; *BigBen*, 2018 WL 4257321, at *2. A fact is "material" if it is essential to the proper disposition of the claim under the relevant substantive law. *Wright v. Abbot Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001). A dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee, Okl.*, 118 F.3d 837, 839 (10th Cir. 1997).

In the instant case, Plaintiff's factual assertions fail to establish a genuine dispute of material fact. Plaintiff effectively raises two arguments disputing the existence of an agreement between Plaintiff and Defendant. First, Plaintiff relies upon his own assertion that he did not accept Defendant's Terms of Use. (Doc. # 38 at 6.) However, general denials and statements that a user does not recall visiting a website or agreeing to

arbitrate are insufficient to defeat arbitration. *See Stein v. Burt-Kuni One, LLC*, 396 F. Supp. 2d 1211, 1213 (D. Colo. 2005) (whether to compel arbitration is governed by a standard similar to that governing a motion for summary judgment, where general denials do not suffice to create a general issue of disputed material fact).

Second, Plaintiff challenges the reliability of the data which allegedly indicates that he registered on Defendant's website and agreed to the Terms of Use. (Doc. # 37 at 5.) Plaintiff's assertion is rebutted by Defendant's CEO, Brenton Marrelli, who has "personal knowledge of [Defendant's] business model and internet operations." (Doc. # 27-1 at 1.) Mr. Marrelli indicated that he "performed a manual search of the raw data in [Defendant's] database . . . ." (Doc. # 51-1 at 3.) From that search, Mr. Marrelli discovered that the "date and time associated with Plaintiff's Terms Acceptance is May 7, 2017 at 23:52:18 UTC . . . ." (*Id.* at 4.) Additionally, Defendant's records reflect that on May 7, Plaintiff accessed Defendant's website through a specific link. (*Id.*) Upon accessing that particular link,

> Plaintiff would have been taken to [Defendant's] "more leads" webpage. Pursuant to the registration process that existed on May 7, 2017, Plaintiff would have been able to complete his registration on this page. . . . As of May 7, 2017, the MoreLeads registration page consisted of a registration form, a "See Job Matches" button, and a notice at the bottom of the page that states "I have read and agree to the terms & privacy policy. The Terms of Use and Privacy Policy were accessible via hyperlinks included in the notice. . . . Finally, next to the statement "I have read and agree to the terms & privacy policy" was a box to be toggled by the user to indicate their acceptance or rejection of the Terms of Use and Privacy Policy. As of May 7, 2017, this box was defaulted to unchecked, and was required to be checked or toggled by the [user] in order to complete [the user's] registration. . . . [t]he [user] is required to accept [Defendant's] Terms of Use and Privacy policy by toggling the check box on the registration page. *Only then can the [user] complete the registration process by selecting the "See Job Matches" button* . . . .

6

(*Id.* at 4–6) (emphasis added). When a user clicks the "See Job Matches" button, Defendant's system records the date and time of that action as well as the internet protocol ("IP") address from which the registration was completed. (*Id.* at 6.) The system also records the version of the Terms of Use that the user accepted. (*Id.*) The information is automatically stored in Defendant's system of record at the time of the action.

Defendant's system reflects that Plaintiff clicked the "See Job Matches" button on May 7, 2017, at 23:52:18 UTC. (*Id.* at 4.) Based on the structure of Defendant's system, that action could have only been accomplished if Plaintiff had checked the box indicating that he agreed with the Terms of Use, which is why the data reflects that particular time and date as being associated with Plaintiff's acceptance of the Terms. However, Plaintiff has not presented any evidence that would refute the conclusion that he pressed the "See Job Matches" button on May 7, which necessarily means that he checked the box indicating that he agreed to the Terms of Use and, therefore, assented to the arbitration clause. As such, Plaintiff has not met his burden of establishing a genuine dispute of material fact with regard to the existence of an arbitration agreement.

## IV.    **CONCLUSION**

Based on the foregoing, the Court GRANTS Defendant GoSmith Inc.'s Motion to Compel Arbitration and STAYS this case pending resolution of the arbitration.

The Court FURTHER ORDERS that Pursuant to D.C.Colo.LCivR 41.2, the Clerk of the Court is directed to ADMINISTRATIVELY CLOSE the above-referenced civil action until January 31, 2020, at which time this case will be dismissed entirely unless,

prior to that date, one or both of the parties file a request to have the case remain pending as administratively closed because the arbitration has not been completed, or file a motion to reopen or dismiss the case based on the arbitrator's order in the arbitration proceeding. It is

FURTHER ORDERED that Pursuant to D.C.Colo.LCivR 41.2 all pending motions, including Defendant's Objection to Magistrate Order (Doc. # 47) and Plaintiff's Motion for Leave to Amend Complaint (Doc. # 58) are TERMINATED. The parties are advised that reopening the case does not reinstate any motion.

DATED: January 31, 2019

BY THE COURT:

CHRISTINE M. ARGUELLO
United States District Judge